IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| OCWEN LOAN SERVICING, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | No. 3:18-cv-1197-S |
| | § | |
| KINGMAN HOLDINGS, LLC and | § | |
| GAYNELLE IHMS, | § | |
| | § | |
| Defendants. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
## UNITED STATES MAGISTRATE JUDGE

Plaintiff Ocwen Loan Servicing, LLC brought an action before this Court against Defendants Kingman Holdings, LLC and Gaynelle Ihms. *See* Dkt. No. 1. Defendant Kingman Holdings, LLC has since filed its answer, *see* Dkt. No. 6, however, Defendant Gaynelle Ihms has not appeared through counsel or filed an answer within the Court's established time limit. As such, Plaintiff filed a Motion for Default Judgment against Defendant Ihms, *see* Dkt. No. 14, and United States District Judge Karen Gren Scholer referred the motion to the undersigned magistrate judge for recommendation. *See* Dkt. No. 16.

Plaintiff seeks a default judgment against Ihms that would allow for the foreclosure of Ihms' interest in a disputed property and the award of court costs and attorneys' fees.

The undersigned recommends that Plaintiff's Motion for Default Judgment [Dkt.

-1-

No. 14] be denied for the failure to demonstrate that Ihms is, in fact, in default as required under Texas Rule of Civil Procedure 735 to foreclose a lien created by a home equity loan.

## Background

The instant case turns on the ownership status of Unit 317, located at 6255 W. Northwest Highway, Dallas, Texas ("the Property"). *See* Dkt. No. 1 at 2. Ten parties were associated with the Property during the time frame in question. *See id*. at 3-5. However, only three are relevant to our inquiry: Defendant Gaynelle Ihms, the party who originally took out a mortgage on the Property; Plaintiff Ocwen Loan Servicing, the Property's mortgage servicer; and Defendant Kingman Holdings, LLC, a party who later purchased the Property from the foreclosure purchaser. *See id.*

In 2005, Defendant Ihms entered into a mortgage agreement with Ameriquest Mortage Company. *See id*. at 3. Ihms excuted a Note in Ameriquest's favor and granted the company a first lien on the Property. *See id.* Ameriquest then sold the Security Interest to Deutsche Bank, which enlisted Ocwen to serve as the mortgage servicer. *See id*.

The Property itself was a part of the Preston Place Condominium Association. *See id*. The Association's Declarations and Covenants compelled each owner to pay the Association assessment fees – the failure of which would allow the Association to recover such fees through a foreclosure sale. *See id.*

In 2011, Defendant Ihms conveyed her interest in the Property to Bormio

Investments, Inc., which then later conveyed the Property to Fortezza Enterprises, Inc. *See id.* at 4. Fortezza then defaulted on the fees owed to the Association in 2015, which led the Association to file a lien against the property and institute a foreclosure sale. *See id.* A company named Northwest Highway 6255 Land Trust bought the Property at the foreclosure sale and subsequently conveyed it to Defendant Kingman Holdings. *See id.*

Separately, in 2010, Defendant Ihms defaulted on her original loan payment that Ocwen was servicing. *See id.* at 5. Ocwen allegedly sent Ihms a Notice of Default and Request to Cure, to which she failed to respond. Ocwen allegedly then sent notice that the debt had been accelerated. *See id.*

On March 3, 2017, the entire Preston Place Condominium building was destroyed by a fire. *See id.* at 4. The collective owners elected to terminate the Association and sell the site to Provident Preston Place, LLC for $18,250,000. *See id.* at 5. Under the agreement, any sale proceeds would be distributed to release any first lien mortgage on any unit in the original building. *See id.*

Ocwen now seeks in this case to assert that (1) Deutsche Bank's lien interest in the Property is valid, and (2) that Defendant Kingman took the Property subject to Deutsche Bank lien interest. *See id.* Further, Ocwen seeks a judgment for foreclosure against Ihms, allowing it to foreclose on the Property in accordance with the Security Instrument. *See id.*

But, because of Ihms' failure to appear and respond to Plaintiff's complaint,

Plaintiff filed a Motion for Default Judgment against Defendant Ihms, seeking an order allowing it to foreclose on her interest in the Property.

## Legal Standards

Under Federal Rule of Civil Procedure 55(a), a default judgment is proper "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend." FED. R. CIV. P. 55(a). Rule 55(b)(2) of the Federal Rules of Civil Procedure governs applications to the Court for default judgment. *See* FED. R. CIV. P. 55(b)(2). A plaintiff seeking a default judgment must establish (1) that the defendant has been served with the summons and complaint and that default was entered for its failure to appear; (2) that the defendant is neither a minor nor an incompetent person; (3) that the defendant is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940; and (4) that, if the defendant has appeared in the action, the defendant was provided with notice of the application for default judgment at least three days prior to the hearing. *See* FED. R. CIV. P. 55; *Twentieth Century Fox Film Corp. v. Streeter*, 438 F. Supp. 2d 1065, 1070 (D. Ariz. 2006).

In the Fifth Circuit, three steps are required to obtain a default judgment: (1) default by the defendant; (2) entry of default by the Clerk's office; and (3) entry of a default judgment by the district court. *See Arch Ins. Co. v. WM Masters & Assocs., Inc.*, No. 3:12-cv-2092-M, 2013 WL 145502, at *2-*3 (N.D. Tex. Jan. 14, 2013) (quoting *New York Life Ins. Co. v. Brown,* 84 F.3d 137, 141 (5th Cir. 1996). A default occurs when a defendant has failed to plead or otherwise respond to the complaint within the time

required by the Federal Rules of Civil Procedure. *See id.* The clerk will enter default when default is established by an affidavit or otherwise. *See id.* After the clerk's entry of default, a plaintiff may apply to the district court for a judgment based on such default. *See id.*

When making a determination as to whether or not to enter a default judgment, district courts are to consider the following factors: (1) whether material issues of fact are at issue; (2) whether there has been substantial prejudice; (3) whether grounds for default are clearly established; (4) whether default was caused by good faith mistake or excusable neglect; (5) the harshness of default judgment; and (6) whether the court would feel obligated to set aside a default on the defendant's motion. *See Arch Ins. Co.,* 2013 WL 145502, at *2-*3 (quoting *Lindsey v. Prive Corp.,* 161 F.3d 886, 893 (5th Cir. 1998).

Entry of default judgment is completely within the Court's discretion. *See Lindsey,* 161 F.3d at 893. The Court appropriately enters default judgment when a defendant fails to answer or otherwise refuses to obey court orders. *See Bonanza Int'l, Inc. v. Corceller,* 480 F.2d 613, 614 (5th Cir. 1973); *see also McGrady v. D'Andrea Elec., Inc.,* 434 F.2d 1000, 1001 (5th Cir. 1970).

"'A default judgment is unassailable on the merits but only so far as it is supported by well-pleaded allegations, assumed to be true.'" *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (quoting *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir.1975)).

Federal Rule of Civil Procedure 8(a)(2) "requires a pleading to contain a short and plain statement of the claim showing that the pleader is entitled to relief. The purpose of this requirement is to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* at 498 (internal quotation marks omitted). "The factual allegations in the complaint need only be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal quotation marks omitted). "[D]etailed factual allegations are not required, but the pleading must present more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (internal quotation marks omitted).

A default causes all well-pleaded allegations of fact related to liability to be deemed admitted. *See Jackson v. FIE Corp.*, 302 F.3d 515, 521, 524–25 (5th Cir. 2002). Although the Court must accept these facts as true, the default alone does not warrant entry of default judgment, as the Court must determine whether the well-pleaded facts state a claim upon which relief may be granted. *See Nishimatsu*, 515 F.2d at 1206 ("There must be a sufficient basis in the pleadings for the judgment entered . . . . [D]espite occasional statements to the contrary, a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover.").

## Analysis

Plaintiff seeks a default judgment against Defendant Ihms that would allow for the foreclosure of Ihms' interest in the Property and the award of court costs and attorneys' fees.

-6-

Here, Plaintiff has proffered information to show that (1) Defendant Ihms was served with the summons and complaint, and that default was entered for Ihms' failure to appear, *see* Dkt. Nos. 9 & 15; (2) no evidence in the record points to Ihms being a minor nor an incompetent person; and (3) Ihms is not in military service or not otherwise subject to the Soldiers and Sailors Relief Act of 1940, *see* Dkt. No. 1, Ex. A-1.

There is no evidence before the Court that "a good faith mistake or excusable neglect" caused the default. *See Arch Ins. Co.,* 2013 WL 145502, at *2-*3. Defendant Ihms was served with a copy of the complaint through personal service on July 10, 2018. *See* Dkt. No. 9. Defendant Ihms had over five weeks to obtain counsel, answer or otherwise respond to Plaintiff's complaint, or alternatively communicate with the Court to prevent the "drastic" remedy of a default judgment. Defendant Ihms failed to do any of these things.

But, despite the evidence Plaintiff has proffered in support of a default judgment, Plaintiff has not established that it is entitled to judicial foreclosure.

Under Texas Rule of Civil Procedure 735, a party seeking to foreclose a lien created by a home equity loan may do so by using one of three methods: "(1) a suit seeking judicial foreclosure; (2) a suit or counterclaim seeking a final judgment which includes an order allowing foreclosure under the security instrument and TEX. PROP. CODE § 51.002; or (3) an application under [Texas Rule of Civil Procedure 736] for an order allowing foreclosure." TEX. R. CIV. P. 735.

Texas courts have required that the party pursuing judicial foreclosure demonstrate "that: (1) a debt exists; (2) the debt is secured by a lien created under Art.

16, § 50(a)(6) of the Texas Constitution; (3) [the borrowers] are in default under the note and security instrument; and (4) [the borrowers] received notice of default and acceleration." *Weeks v. Green Tree Servicing LLC*, No. 4:15-cv-00588-O-BP, 2017 WL 4325797, at *7 (N.D. Tex. Sept. 11, 2017) (internal quotation marks omitted). A lender is only entitled to judicial foreclosure if it can affirmatively demonstrate that the borrower is in default. *See Huston v. U.S. Bank Nat'l Ass'n*, 988 F. Supp. 2d 732, 740 (S.D. Tex. 2013), *aff'd*, 583 F. App'x 306 (5th Cir. 2014).

Plaintiff's complaint supports the first, third, and fourth elements with well-pleaded allegations:

- "As part of the loan agreement, Ihms also executed a Texas Home Equity Security Instrument (First Lien) which granted Ameriquest a first lien interest on the Property";

- "Ihms has defaulted on her obligations under the terms of her loan agreement. The loan agreement is currently due for the July 1, 2010 [sic] payment and all subsequent monthly payments"; and

- "[n]otice of default and request to cure was mailed to Ihms in accordance with the Loan Agreement and the Texas Property Code. The default was not cured, and the maturity of the debt is hereby accelerated."

Dkt. No. 1 at 3-5.

But Plaintiff's complaint does not adequately support the second requirement with well-pleaded allegations. Plaintiff pleads that:

On or about June 21, 2005, Ihms obtained a Texas Home Equity

-8-

Adjustable Rate Note from Ameriquest Mortgage Company ("Ameriquest"). As part of the loan agreement, Ihms also executed a Texas Home Equity Security Instrument (First Lien) which granted Ameriquest a first lien interest on the Property. Ameriquest's lien was recorded on or about July 5, 2005, in the Dallas County Real Property Records as Instrument Number 3416903 (the "Security Instrument").

Dkt. No. 1 at 3.

These allegations fail to establish – as Plaintiff's complaint must to support a default judgment against Ihms for judicial foreclosure on her interest in the Property – that the debt is secured by a lien created under Article 16, § 50(a)(6) of the Texas Constitution. *See HSBC Bank USA, N.A. v. Soria*, No. H-17-2174, 2018 WL 461112, at *2-*3 (S.D. Tex. Jan. 17, 2018); *U.S. Bank, N.A. v. Ross, et al.*, No. H-15-2385, 2017 WL 2730769, at *2 (S.D. Tex. June 26, 2017).

The plaintiff in *Soria* made an almost identical pleading about the facts relevant to the second element:

On or about November 24, 2004, the Sorias obtained a Home Equity Adjustable Rate Note (the "Note") from Resmae Mortgage Corporation. As part of the loan agreement, the Sorias also executed a Texas Home Equity Security Instrument (First Lien) (the "Security Instrument"). In the Security Instrument, Mortgage Electronic Registration Systems, Inc. as nominee for lender and Lenders Successors and Assigns ("MERS") was named as the beneficiary. The Security Instrument was recorded on or about December 6, 2004, in the Harris County Real Property Records as Instrument Number 30052935.

Complaint at 3, *Soria*, 2018 WL 461112, Dkt. No. 1. But the court in *Soria* held that the plaintiff was not entitled to the remedy of foreclosure – and grant of a default judgment – because such a showing did not establish that the second element had been alleged. 2018 WL 461112, at *3. "Further, because [the plaintiff] did not attach any of

the loan documents to the complaint or motion for default judgment, the court [could not] determine whether [the plaintiff's] lien was created under Art. XVI, § 50(a)(6) of the Texas Constitution") (citations omitted). *Id*.

The court in *Ross, et al.* reached the same determination. *See* 2017 WL 2730769, at *2. The plaintiff in that case pled that,

> [o]n or about September 2, 1980, Defendants Earl E. Ross Jr. and Cheryl L. Ross (the "Rosses") executed a *Deed of Trust Note* in the principal amount of $62,200.00 ("Note"), originally payable to Sam Houston Mortgage Corporation ("Sam Houston Mortgage") as lender on a loan secured by the Property. Concurrently with the execution of the Note, the Rosses executed a *Deed of Trust* ("Security Instrument," and all together with the Note, "Loan Agreement"), as grantors, granting Sam Houston Mortgage, its successors and assigns, a security interest in the Property. The Security Instrument was recorded in the Real Property Records of Harris County, Texas, under document number G687431.

Complaint at 5, *Ross, et al.*, 2017 WL 2730769, Dkt. No. 1. The court held that the plaintiff "[did] not meet the second or fourth requirements." *Ross, et al.*, 2017 WL 2730769, at *2.

The court in *Soria* also explained that, "[i]n its complaint, [the plaintiff] pleads 'judicial foreclosure' as its cause of action"; that "judicial foreclosure is a remedy rather than a cause of action"; and that, "[o]ut of an abundance of caution, the court will consider whether HSBC is entitled to the remedy of foreclosure even though it did not plead a viable claim as is required under Rule 8(a)." 2018 WL 461112, at *3 n.1; *accord Ross, et al.*, 2017 WL 2730769, at *2-*3.

Like the plaintiffs in *Soria* and *Ross, et al.*, even assuming Plaintiff here pleaded a valid cause of action for judicial foreclosure, Plaintiff did not adequately allege the

second element and has also not provided any loan documentation for the undersigned to review in the absence of such an express pleading. Because the well-pleaded allegations of fact related to liability that are deemed admitted do not support a finding that the debt is one secured by a lien created under Art. 16, § 50(a)(6) and, ultimately, whether Plaintiff is entitled to the remedy of judicial foreclosure, Plaintiff has failed to establish the requirement element that Ihms is in default as required under Rule 735 to foreclose a lien created by a home equity loan.

## Recommendation

For theses reasons, the Court should deny Plaintiff's Motion for Default Judgment [Dkt. No. 14].

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v.*

*United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

    DATED: December 14, 2018

_____

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE